# CASES

## FIRST DISTRICT

# APPELLATE COURTS OF ILLINOIS

### DURING THE YEAR 1922.

---

### P. J. Sibley, Appellant, v. Central Trust Company of Illinois, Appellee.

### Gen. No. 27,246.

1. BANKING—*right to charge depositor with forged check deposited for collection and drawn against.* A bank is entitled to charge a depositor's account with the amount of a forged certified check drawn on another bank and deposited by the depositor in his checking account pursuant to agreement with the bank that all such items would be received for collection only and that his account would be charged with the amount of any uncollectible items, where the entire amount of the forged check was immediately withdrawn by the depositor, after inquiry of and assurance by the bank's assistant cashier that the check being certified "ought to be good" but to deposit it in the usual way and check out against it.

2. BANKING—*extent of bank's duty to ascertain genuineness of certified check deposited for collection.* A bank which accepts for deposit certified paper drawn on another bank in the same city, only on condition that such paper is taken for collection and under agreement with the depositor that uncollectible items will be charged back against his account, is not under any duty, upon receiving from a depositor a certified check drawn on another bank, to make inquiry of the drawee bank as to the genuineness

of the paper, especially where the depositor makes no request therefor but merely inquires of the assistant cashier whether the check is good, makes no attempt to inquire of the drawee bank, which is accessible, whether the check is genuine or not or protect himself against such check, and the bank is not bound by the erroneous answer of the cashier giving his opinion that the check is genuine.

Appeal from the Municipal Court of Chicago; the Hon. ASA G. ADAMS, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1921. Affirmed. Opinion filed October 3, 1922.

CHARLES J. O'CONNOR and RODERICK H. O'CONNOR, for appellant; W. H. GALLAGHER, of counsel.

FISHER, BOYDEN, KALES & BELL, for appellee; J. F. DAMMANN, JR. and ROY P. KELLY, of counsel.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

On March 25, 1921, plaintiff brought a fourth-class action in contract in the municipal court of Chicago against the defendant bank, in which he had been a depositor for several years, to recover a balance of a deposit in a certain checking account of $572.56, and also the further sum of $204.53, being a balance claimed in a certain savings account, both amounting to the total sum of $777.09. Defendant in its affidavit of merits denied that any moneys were due plaintiff, and alleged that on March 4, 1921, plaintiff deposited with it for collection a check for $1,450, dated March 2, 1921, drawn by one William S. Rocheford on the National City Bank of Chicago, payable to the order of plaintiff; that defendant credited plaintiff's check-ing account conditionally with the amount of the check, which amount plaintiff immediately withdrew: that thereafter the check was returned by the National City Bank marked "insufficient funds" and "certifi-cation fraudulent"; and that thereupon defendant, in accordance with its practice and with its agree-

ment with plaintiff, charged back the amount of the check to plaintiff's checking account, which thereby was largely overdrawn, and applied said sum of $204.53 in the savings account in part liquidation of the overdraft. Defendant also filed a statement of claim of set-off, claiming that by reason of the overdraft there was due it from plaintiff, after applying said sum of $204.53 in said savings account, the net sum of $672.91. The cause was tried before the court without a jury, resulting in the court finding the issues against plaintiff and in favor of defendant on its claim of set-off and assessing its damages at said sum of $672.91, and entering judgment on April 27, 1921, against plaintiff for that amount, who thereafter perfected this appeal.

Plaintiff was in the business of selling fountain pens on the east side of Dearborn street between Madison and Washington streets, Chicago. He also dealt in a small way in Liberty bonds. The National City Bank is located on the southeast corner of Dearborn and Monroe streets, about one and one-half blocks south of plaintiff's place of business. The defendant bank is located on the south side of Monroe street, about two blocks west of the National City Bank. Several days prior to March 4, 1921, William S. Rocheford, a stranger to plaintiff, called at the latter's place of business and said he desired to purchase certain Liberty bonds and plaintiff said he could procure them, and did so; that subsequently Rocheford telephoned plaintiff that he would send a messenger for them; that on March 4 the messenger appeared and tendered plaintiff for the bonds the check in question, bearing on its face what purported to be the certification of the check by the National City Bank, the drawee, and that plaintiff, telling the messenger to wait, took the check to the defendant bank and had conversations with Walter R. Werner, assistant cashier, and F. W. Schmidt, receiving teller,

thereof. There is some conflict in the testimony of plaintiff and of Werner and Schmidt as to what thereafter occurred. In this connection it may be stated that plaintiff, when making deposits on his checking account in the bank, used a deposit book, on the inside of the cover of which, under the heading "Notice to Depositors," is the following:

"CASH ITEMS. You are hereby notified that you are held responsible for the non-payment of all items deposited by you drawn on Chicago banks members of the Chicago Clearing House Association until the close of the business day next succeeding that on which such items are deposited, this bank receiving them only for collection for your account. *   *   *"

Plaintiff testified, in substance, that upon arriving at the bank he went directly to Werner, exhibited the check and asked if it was good; that Werner examined it and said that it was good; that plaintiff then said: "I have got to deliver some Liberty bonds and I want to get the cash on it. Will you O. K. it?" that Werner replied: "I would rather you would take the check and deposit it to your account and then draw against it"; that thereupon plaintiff made out a deposit slip, went to the receiving teller, and deposited the check in the usual manner; that he then drew a check for $1,450 on one of the bank's counterforms, payable to himself, and handed it to the paying teller, who, after examination and inquiry, finally paid plaintiff $1,450 in currency; that plaintiff went back to his place of business, delivered the bonds aggregating in value $1,445.90, and the balance $4.10 in currency, to the said messenger of Rocheford; and that on the following noon he was informed by telephone by the bank that the Rocheford check, which he had deposited, had been returned to the bank with the indorsement "Not sufficient funds, certification fraudulent," and that the bank had charged back the amount of the check to his account. Schmidt, the receiving

teller, testified that plaintiff first presented the check in question to him and asked him to O. K. it, and that he refused to do so, and sent plaintiff either to the paying teller or to the assistant cashier.

Werner testified, in substance, that when plaintiff exhibited the check he simply "asked me to O. K. the check so that he could get it cashed"; that he told plaintiff "to deposit the check in the regular way and draw his own check against it"; that he gave this direction "so that the bank would be protected if the check came back"; that plaintiff, as he was walking away, asked if the check was good and he looked at it and replied: "It is a certified check, and a certified check ought to be good." Werner denied that at this interview plaintiff made any statement whatever regarding any Liberty bonds. It was agreed that the purported certification on the check was a forgery and that the check was a fraudulent one.

Werner was called as a witness for plaintiff under section 33 of the Municipal Court Act [Cahill's Ill. St. ch. 37, ¶ 421] and further testified that on March 4 the defendant bank had a certificate book or files in the paying teller's cage containing the signatures of officers of other Chicago banks, that at the time plaintiff exhibited the check in question to him he did not take it and compare the certification signature thereon with the signatures of the officers of said National City Bank so on file, or telephone said last-named bank or make any inquiry to ascertain whether or not the check was a genuine one. He further testified that it was not the practice of the defendant bank to make use of the signature cards received from other Chicago banks for the reason that all banks did not send in such cards or keep them up to date, or its practice to telephone a drawee bank to ascertain whether a certain check was good, for the reason that all Chicago banks will not give such information; that when any question arises concerning a certified check

of a substantial amount of a drawee bank its practice is to put a rubber stamp request on the back of the check, send it over to the drawee bank and get its cashier's check for the item; that plaintiff during said interview on March 4 did not request that any inquiry be made of the National City Bank as to whether or not the particular check was a good one; and that had such a request been made there was no reason why the check could not have been sent over to that bank with the request that a cashier's check be obtained therefor.

It is contended by plaintiff's counsel that the trial court erred in not entering judgment in favor of plaintiff for the full amount of his claim and in not denying defendant's claim of set-off. The argument, as we understand it, is substantially as follows: That defendant bank placed its assistant cashier, Werner, in a position to answer inquiries from its depositors regarding the genuineness of commercial paper; that he was acting as its agent and it is bound by his admissions or declarations; that when plaintiff asked Werner whether the check was good and received an answer in the affirmative he, as a depositor in defendant's bank, had a right to rely upon such statement; that the bank, through Werner, was negligent in not making inquiries, as it should have done, as to the genuineness of the check before allowing plaintiff, who was the innocent holder thereof, to draw out from the defendant bank the amount of the check and afterwards part with his Liberty bonds; and that, hence, the judgment for $672.91 in favor of defendant should not stand. We cannot agree with the contention or the argument. In the first place, the evidence discloses that there was an agreement between the parties whereby checks such as the one in question were accepted by the bank for collection with the right to charge the amount back in the event they were not collected, and that there was a reaffirmance of such

contract in this particular instance in that Werner required that the check be deposited in the usual way. In the second place, under the facts disclosed, we do not think that defendant bank, through its assistant cashier, was under any duty to make inquiries as to whether or not the check was good so as to prevent any possible future loss to plaintiff, and, there being no such duty on its part, it cannot be held liable for the alleged negligence in failing to make such inquiries. (*McAndrews v. Chicago, L. S. & E. Ry. Co.*, 222 Ill. 232, 236.) It is true that there are decided cases holding a bank liable under certain circumstances where a cashier, or other authorized officer, makes careless and false declarations or admissions concerning the bank's *own paper*, which are relied upon and cause loss to the person to whom made, but in the instant case the check was not drawn on defendant bank but on the National City Bank. The statement of Werner to plaintiff, when the latter exhibited the check, to the effect that the check was good, or that a certified check ought to be good, amounted to nothing more than a statement of his opinion. He was in no position to give anything but his opinion as to the genuineness of the check or of the signature of certification thereon. It was not his duty to know that signature. In 1 Morse on Banks & Banking (5th Ed.), sec. 167, p. 374, the author, speaking of the authority of a cashier to answer questions as to the genuineness of paper says: "He is intrusted by the bank with the duty of deciding upon the genuineness of such paper when it is presented for payment or redemption. But if such paper is shown to him, not for the purpose of demanding payment thereon, but simply to inquire whether or not it be genuine, his erroneous answer that it is so will not bind the bank as an admission. For it is not his function to give such information." It is a somewhat peculiar circumstance in this case that plaintiff,

desirous of knowing as soon as possible whether the check which the waiting messenger had delivered was genuine before surrendering the Liberty bonds, did not call at the National City Bank and obtain first hand the desired information, but, passing by that bank, he went two blocks further to the bank in which he was a depositor, made inquiries as shown, and at no time before depositing the check suggested to anyone that the check be presented at, or inquiries be made of, the National City Bank.

Our conclusion is that the judgment of the municipal court should be affirmed and it is so ordered.

*Affirmed.*

BARNES, P. J., and MORRILL, J., concur.