FOURTH DIVISION
March 10, 2011

No. 1-10-1440

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| TOM D. SEIP and ALEXA C. SEIP, Cotrustees of the Tom and Alexa Seip Living Trust, CLARENCE RIDLEY and ELEANOR RIDLEY, On Their Own Behalf and On Behalf of All Others So Situated, | ) ) ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 07 CH 11719 |
| ROGERS RAW MATERIALS FUND, L.P., an Illinois Limited Partnership; BEELAND MANAGEMENT COMPANY, L.L.C., an Illinois Limited Liability Company and General Partner of The Rogers Raw Materials Fund, and JAMES BEELAND ROGERS, JR., an Individual, | ) ) ) ) ) ) ) | Honorable Mary K. Rochford, |
| Defendants-Appellees. | ) | Judge Presiding. |

JUSTICE LAVIN delivered the judgment of the court, with opinion.
Presiding Justice Gallagher and Justice Pucinski concurred in the judgment and opinion.

**O P I N I O N**

I.  BACKGROUND

Here, we consider an appeal filed by disgruntled investors after their complaint against

two investment funds and one individual was dismissed by the trial court.  For the reasons

discussed below, we affirm the judgment of the circuit court in all respects.

A.  Parties Involved

The underlying facts in this dispute revolve around two index funds (Funds), the Rogers

Raw Materials Fund (Private Fund) and the Rogers International Raw Materials Fund (Public Fund). Tom and Alexa Seip, cotrustees of the Tom and Alexa Seip Living Trust, and Clarence and Eleanor Ridley (collectively, plaintiffs) brought this class action suit against Beeland Management Company, L.L.C. (Beeland), James B. Rogers, and the Private Fund. Plaintiffs are former investors and limited partners in the Private Fund, and their rights as limited partners were controlled by a document titled "Second Amended and Restated Agreement of Limited Partnership" (Partnership Agreement). The Funds invested in commodities of futures and forward contracts that track the composition of the Rogers International Commodity Index, which was created by Rogers, and any unused assets were either held as cash or invested in government securities. A "Confidential Private Placement Memorandum" between the parties provided that investments would be held in segregated, regulated customer accounts and not be commingled with other assets. Beeland is a general partner of the Private Fund and also manages its operations. Beeland itself is managed by Tom Price, the chief executive officer, and Allen Goodman, the chief financial officer. Rogers is a 69% owner of Beeland, while Price and Goodman do not own any equity in Beeland.

## B. Rogers and Relationship With Refco

Refco, now defunct, was a financial services company based in New York consisting of a number of entities. According to an affidavit given by Robert Mercorella, in spring 2005, Rogers asked Refco executives for assistance in finding candidates to serve as Beeland's chief operating officer. At that time, Mercorella was employed by Refco Alternative Investments in New York City. Mercorella was asked to assist in the candidate search, and during the process, he informed

2

Rogers that he wished to be considered as a candidate and was ultimately hired by Rogers. According to Mercorella, Rogers was contemplating relocating Beeland to New York and wanted Mercorella's assistance in making Refco the selling partner for the Funds. Eventually, Beeland agreed that Refco, LLC, a regulated subsidiary of Refco, Inc., would serve as the Funds' selling agent. Rogers and Refco also agreed that Refco would acquire Rogers' interest in Beeland.

### C. Diversion of Private Fund's Assets

Refco, LLC's assumption as the Funds' administrator involved, among other things, the transfer of assets from the Funds' brokers at that time, Man Financial, Inc., and Harris, N.A., to Refco, LLC. Accounts were opened with Refco, LLC, and Refco Capital Markets (Refco CM), an offshore unregulated securities and foreign exchange broker, also a subsidiary of Refco, Inc. The account with Refco CM was part of a long-term plan to eventually transfer assets to Refco CM for strategic financial reasons. In September 2005, Price and Goodman initiated the transfer of the Funds' assets to Refco, LLC. Price executed two account transfer forms, one each for the Private and Public Funds, on September 22, 2005. The forms identified Man Financial, Inc., as the transferring firm and Refco, LLC, as the receiving firm, and stated: "Please be advised that I hereby direct you to transfer my account balances, margin and open commodity position to Refco, LLC." Goodman gave similar instructions to Harris in regards to the Funds' assets held there.

An affidavit by Price indicated that he had "made clear to Refco that no collateral was to be transferred to Refco CM until *** after the Funds' existing investors were provided with advance notice that Refco CM would hold collateral" and "were given an opportunity to redeem

3

their interests in the funds if they did not want to accept the credit risk of having fund property held at Refco CM." Pursuant to Price's and Goodman's instructions, approximately $297.5 million of the Funds' assets were transferred in early October 2005, but Price later learned that the assets were transferred directly to Refco CM, without any express direction from either Price or Goodman. Upon learning this, Beeland immediately sought to have the assets transferred either to Refco, LLC, or back to the original brokerage accounts.

### D. Refco Bankruptcy and the Special Redemption Letter

Shortly thereafter, Refco announced that nearly $500 million of debt had been concealed by its chief executive officer. As a result, on October 17, 2005, Refco, Inc., and a number of its affiliates and subsidiaries, including Refco CM, declared bankruptcy and subsequently filed for protection under chapter 11 of the Bankruptcy Code (11 U.S.C. §101 *et seq.* (2006)). Refco, LLC, filed for bankruptcy as well in November 2005. Beeland filed a complaint in the bankruptcy court against Refco CM seeking the return of the cash and securities that were diverted from Refco, LLC, to Refco CM.

On November 15, 2005, a letter was issued to the limited partners concerning a "special redemption process" (special redemption letter). It provided that the limited partners could elect to receive "their *pro rata* portion of the Fund's available cash as of November 30, 2005, less anticipated expenses." It noted that redeeming limited partners "would not be shielded from the potential effects (losses and expenses) of Refco Capital Markets' bankruptcy." The special redemption letter estimated that the disbursement from available cash would be based on "approximately 30% of the Fund's total assets, including assets held at Refco Capital Markets,"

and that the balance of redemption proceeds would be distributed once either Refco CM proceedings were settled or there was sufficient asset liquidity. The special redemption letter further stated that "all redemption requests will be treated as requests for redemption in full."

Plaintiffs promptly sent requests for the special redemption. According to an affidavit by Goodman, as of December 1, 2005 (the effective redemption date), the capital accounts, less assets protected by bankruptcy proceedings, of the Seips constituted $172,210.46 and the Ridleys constituted $52,147.46. Those amounts were disbursed to the respective plaintiffs in December 2005.

E. Recovery of Diverted Assets and Subsequent Redemption Distributions

Beeland was ultimately able to recover the assets transferred to Refco through various recovery efforts. After the Refco bankruptcy proceeding, a $30 million settlement was entered into on October 11, 2006. The settlement also allowed Beeland to participate in the proceeds from other recovery proceedings against Refco, whereby 97.12% of the value of the Private Fund's transferred assets were recovered by April 15, 2008, and 101.3% recovered as of December 31, 2009. As Beeland recovered the diverted assets, they made further disbursements to plaintiffs pursuant to the special redemption letter. Ultimately, with bankruptcy-protected assets included, plaintiffs received over 100% of the November 2005 value of their capital accounts.

F. Underlying Complaint and Dismissal

At various times in 2006 and 2007, a number of complaints were filed in New York and Illinois regarding these events against defendants and other parties not a part of the instant

1-10-1440

appeal. Besides plaintiffs' case, two other cases in Illinois were filed: Lane v. Beeland Management Co., No. 06-L-5193 (Cir. Ct. Cook Co.) and Joseph L. & Francis L. Simek Family Investments, Ltd. v. Beeland Management Company, No. 06-CH-2983. Plaintiffs' complaint was filed on May 14, 2007, and later amended on April 1, 2008. In its final form, plaintiffs' complaint contained claims for breach of contract, post-redemption interest, tortious interference with a contract, unjust enrichment, declaratory judgments, and accounting. On May 15, 2008, Rogers, Beeland, Price, and Goodman filed omnibus motions under sections 2-615 and 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615, 2-619 (West 2008)) to dismiss plaintiffs' complaint, as well as the Lane and Simek complaints, before the circuit court. The Simek complaint was later voluntarily dismissed and the New York actions have also since been dismissed. The motions to dismiss were extensively briefed and argued, and on June 16, 2009, the circuit court issued a written order dismissing all claims against all defendants. Plaintiffs then filed a motion for reconsideration on July 15, 2009. After the parties briefed and argued the motion, the circuit court issued a written order on April 27, 2010, denying plaintiffs' motion for reconsideration. Plaintiffs timely appeal, specifically contending that their claims for breach of contract, post-redemption interest, fees and expenses charged to their accounts, tortious interference with a contract, and declaratory judgments were improperly dismissed.

## II. ANALYSIS

A motion to dismiss under section 2-615 admits all well-pleaded facts and attacks the legal sufficiency of the complaint. *La Salle National Bank v. City Suites, Inc.*, 325 Ill. App. 3d 780, 790 (2001). The applicable determination when considering a section 2-615 motion is

1-10-1440

"whether the allegations of the complaint, when viewed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted." *Canel v. Topinka*, 212 Ill. 2d 311, 317 (2004). Dismissal is appropriate where it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to relief. *Tedrick v. Community Resource Center, Inc.*, 235 Ill. 2d 155, 161 (2009).

A motion to dismiss under section 2-619, on the other hand, admits the legal sufficiency of the complaint but raises defects, defenses, or other affirmative matters that appear on the face of the complaint or are established by external submissions that act to defeat the claim. *Krilich v. American National Bank & Trust Co. of Chicago*, 334 Ill. App. 3d 563, 569-70 (2002). When reviewing a circuit court's disposition of a motion to dismiss under section 2-619 of the Code, this court must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party. *Melena v. Anheuser-Busch, Inc.*, 219 Ill. 2d 135, 141 (2006). Where a cause of action is dismissed under a section 2-619 motion, the question on appeal is whether a genuine issue of material fact exists and whether the defendant is entitled to a judgment as a matter of law. *LaSalle Bank National Ass'n v. Village of Bull Valley*, 355 Ill. App. 3d 629, 635 (2005).

We review an order granting a motion to dismiss pursuant to section 2-615 or section 2-619 *de novo*. *Illinois Non-Profit Risk Management Ass'n v. Human Service Center of Southern Metro-East*, 378 Ill. App. 3d 713, 719 (2008).

## A. Breach of Contract

Plaintiffs first contend that their breach of contract claims were improperly dismissed under section 2-619 of the Code. The gravamen of plaintiffs' claim is that Beeland did not

7

properly satisfy their requests for redemption.  In analyzing this issue, the three items we must examine are the Partnership Agreement, the special redemption letter, and the value of plaintiffs' capital accounts.  Paragraph 9(b) of the Partnership Agreement generally governed a limited partner's right to withdrawal of capital, *i.e.*, redemption.  It provides in pertinent part:

> "A Partner *** may withdraw any part or all of his capital contribution and undistributed profits, if any, from the Partnership by requiring the Partnership to redeem all or a part of such Partner's Interest *** effective as of the end of the first month ending at least twenty (20) days after a request for redemption in acceptable form has been delivered to the General Partner. *** Upon redemption, a Partner *** shall receive an amount equal to the value of the Interest redeemed as of the effective date of redemption ***."

On November 15, 2005, a special redemption letter availed the limited partners of a special redemption process to give them an opportunity to no longer participate in the trading activities of the Funds.  The special redemption was offered as a result of Refco CM's diversion of the Funds' assets and its subsequent bankruptcy, and provided a detailed explanation of the special redemption rights.  As we stated in our recitation of the underlying facts, a limited partner electing to participate in the special redemption would receive its "*pro rata* portion of the Fund's available cash as of November 30, 2005, less anticipated expenses."  The special redemption letter noted that a "substantial portion" of assets was under bankruptcy court protection and that redeeming partners would "not be shielded from the potential effects (losses and expenses) of Refco Capital Markets' bankruptcy."  An estimated 30% of the Private Fund's total assets was

available for disbursement on a *pro rata* basis, and once the Refco CM matters were settled or there was sufficient asset liquidity, a "net asset value for the Fund as of November 30, 2005," would be determined and remaining redemption balances appropriately satisfied. Finally, the special redemption letter indicated that "all redemption requests will be treated as requests for redemption in full."

It is undisputed that plaintiffs returned a request for a special redemption in response to the special redemption letter. It is also undisputed that the Seips and Ridleys respectively received $172,210.46 and $52,147.46 in an initial disbursement in December 2005 as a result of the special redemption, and that they received subsequent disbursements as recoveries were made in the various Refco proceedings, eventually amounting to 100% of their respective interests, plus trading gains, as of November 30, 2005. Plaintiffs, however, maintain they although they eventually received 100% of their interests, they nevertheless did not receive those amounts in a timely manner. According to their memorandum in opposition to the motions to dismiss, their initial redemption disbursements did not include the "amounts over which Defendants had lost control to Refco CM."

A reading of the special redemption letter clearly provides for the method of disbursement. It explicitly provides that limited partners participating in a November 2005 redemption will receive, in December 2005, a *pro rata* share of "available cash" as of November 30, 2005, less anticipated expenses. Because a significant sum of the Fund's assets was under bankruptcy protection and, thus, unavailable, the special redemption letter further noted that the estimated size of available cash would be only 30% of total assets, if bankruptcy-protected assets

were included, and that subsequent disbursements would be made as cash became available. Put simply, although plaintiffs argue that they were immediately entitled to the entire sum of their capital accounts, the record indicates that they actually requested the "*pro rata* share of the Fund's available cash as of November 30, 2005." This is precisely what occurred.

We note that the December 2005 redemption values, and subsequent disbursements, were derived from affidavits provided by Goodman. These values were never said to be objectionable and plaintiffs never filed a counteraffidavit. As we have held before, facts contained in an affidavit in support of a motion to dismiss which are not contradicted by a counteraffidavit must be taken as true for purposes of the motion. *Atkinson v. Affronti*, 369 Ill. App. 3d 828, 835 (2006). Nevertheless, plaintiffs argue that account statements prepared by Beeland subsequent to November 2005 contradict Goodman's affidavit. The account statements indicate that the Seips' interest totaled $1,798,646.83 and the Ridleys' interest totaled $544,652.54, and plaintiffs argue that those amounts were what they were entitled to in December 2005. Plaintiffs, however, again fail to acknowledge that the vast majority of assets was under bankruptcy protection and inaccessible. Furthermore, letters accompanying the account statements also provided that the stated remaining balances were subject to adjustments based on "[e]xpenses related directly to the recovery of [their] funds from Refco Capital Markets," and "[a]ny impairment of assets, once known, that occurs as a result of the bankruptcy of Refco Capital Markets." The letters also noted that it was unknown whether any assets would be impaired and, therefore, no balance deduction would be made at that time. We reiterate that the special redemption's initial disbursement was strictly based on "available cash." Simply because Beeland declined to

devalue plaintiffs' account statements because it hoped to recover assets held by the bankruptcy-protected Refco CM does not equate to an official statement of "available cash" or otherwise contradict Goodman's affidavit.

Plaintiffs argue that the circuit court improperly weighed the evidence and resolved factual disputes while considering the dismissal of plaintiffs' breach of contract claim. We acknowledge that when considering a motion to dismiss under section 2-619, where the nonmoving party has made a jury demand, the circuit court must leave any dispute of material facts to the jury. *Turner v. 1212 S. Michigan Partnership*, 355 Ill. App. 3d 885, 892 (2005). Dismissal is still appropriate, however, where the basis of law or easily proven facts allow. *Reed v. White*, 397 Ill. App. 3d 975, 978 (2010).

Plaintiffs first allege that the circuit court overstepped its authority in finding that plaintiffs had requested a partial redemption. Plaintiffs assert that, by requesting the special redemption, they were not seeking a partial redemption but were exercising their "right to redeem the full value of their limited partnership interests," and it was a "sharply disputed issue of fact." The circuit court, however, never stated plaintiffs requested a partial redemption but instead found that plaintiffs requested a "*pro rata* portion of the Fund's available cash" pursuant to the plain language of the special redemption letter. As discussed, there is no dispute that plaintiffs submitted redemption requests pursuant to the special redemption letter, that the special redemption letter contains the language discussed here, and that plaintiffs received their "*pro rata* portion of the Fund's available cash." We acknowledge that the special redemption letter states a special redemption request would be treated as a redemption in full, but it is also readily

11

apparent that a limited partner's special redemption would be based on the limited partner's entire interest.

Plaintiffs also argue that the amounts they did receive in December 2005 were in dispute, and that the circuit court improperly resolved this based on a "self-serving" affidavit. We first note that this is a shift from plaintiffs' original basis for their breach of contract claim. As alleged in their complaint, the claim was not based upon miscalculations by Beeland but instead on a failure to redeem plaintiffs' interests in a timely manner. Even putting aside this inconsistency, we have already found that plaintiffs never moved to strike the relevant statements in Goodman's affidavit, failed to file a counteraffidavit challenging Goodman's statements, and never submitted any evidence indicating that the disbursement received in December 2005 was not their *pro rata* share of available cash at that time. Plaintiffs' repeated reliance on the account statements received after December 2005 is misplaced, since they do not actually contradict the values offered in Goodman's affidavit. Accordingly, we find that the circuit court did not improperly resolve any factual disputes here. Plaintiffs' breach of contract claim was properly dismissed.

### B. Postredemption Interest and Charged Fees and Expenses

Plaintiffs next contend that the circuit court erred in dismissing their claims for postredemption interest and account charges under sections 2-615 and 2-619 of the Code. As for the post-redemption claim, plaintiffs first point to the Partnership Agreement, which specifically provides a number of permissible reasons for a redemption's "delayed payment," and that such delayed payments earn interest at a specified rate. This contention ignores the fact that there

were no delayed payments. The special redemption process provided for a December 2005 disbursement of a *pro rata* portion of available cash and subsequent distributions as matters with Refco CM were settled or as assets otherwise attained sufficient liquidity. There is no dispute that this is precisely what happened. Nothing in the record raises an issue that the payments were untimely under the terms of the special redemption, and accordingly there is no right to interest under the Partnership Agreement.

Alternatively, plaintiffs claim they are entitled to interest under section 2 of the Interest Act (815 ILCS 205/2 (West 2008)). Primarily, plaintiffs point to language in section 2 that provides interest on "all moneys after they become due on any *** instrument of writing" (815 ILCS 205/2 (West 2008)), if the amount due is "fixed or easily calculated" (*First National Bank of LaGrange v. Lowrey*, 375 Ill. App. 3d 181, 214-15 (2007)). We must reject this claim for the same reasons we reject plaintiffs' postredemption interest claim under the Partnership Agreement, because plaintiffs have not demonstrated an untimely payment as defined by the agreement. The record shows that the December 2005 disbursement was properly made and, as assets were eventually recovered, subsequent redemption disbursements were made as well. As plaintiffs admit in their appellate brief, the breach of contract claim is "the predicate for their interest claim." Accordingly, because we have found that there was no breach of contract or delay under the terms of the special redemption letter, plaintiffs' claim for postredemption interest was properly dismissed.

Plaintiffs also argue that the circuit court improperly dismissed their claim for reimbursement of fees and expenses charged to their capital accounts postredemption. We

disagree.  Plaintiffs' complaint simply alleges that they are entitled to a "reimbursement for all fees and charges imposed on their accounts at least since September 2005."  It does not elaborate any further on this assertion.  On appeal, however, plaintiffs argue that Beeland and the Private Fund were prohibited from imposing charges and expenses incurred "because of their breach of the agreement or because of their negligent or wrongful conduct."  Plaintiffs, however, do not cite to any particular provision of the Partnership Agreement that was breached.  We note that plaintiffs' breach of contract claim, as alleged in their complaint, was actually based on the assertion that they were entitled to "the full amount in their capital accounts" by December 2005 pursuant to the Partnership Agreement, which we have already found was properly dismissed.  Moreover, expenses incurred in recovering the assets were properly charged to the partnership pursuant to paragraph 6(e) of the Partnership Agreement, which provides that the "Partnership shall bear all *** operating expenses, including legal, accounting, administrative and extraordinary expenses."  Accordingly, we find that plaintiffs' claim here, as alleged in their complaint, was properly dismissed.

Plaintiffs, however, now argue on appeal that by pleading a breach of contract occurred at all, their claim for a reimbursement was impliedly couched within the duty of good faith and fair dealing.  The duty of good faith and fair dealing is implied in every contract and requires a party vested with contractual discretion to exercise it reasonably, and not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of parties.  *Kirkpatrick v. Strosberg*, 385 Ill. App. 3d 119, 131 (2008).  The duty, however, is not an independent source of duties for the parties to a contract, and is "used as a construction aid in determining the intent of the parties

14

where an instrument is susceptible of two conflicting constructions." *Fox v. Heimann*, 375 Ill. App. 3d 35, 42 (2007).

It is unclear to this court how plaintiffs can now claim that their reimbursement claim is based on the duty of good faith and fair dealing, as opposed to the breach that was originally alleged in the complaint. No cause of action in plaintiffs' complaint mentions the duty of good faith and fair dealing or provides any allegations in support of such a claim. Although plaintiffs cite a pair of cases in arguing that they were not required to plead a breach of the duty of good faith and fair dealing, the cases cited do not stand for such a proposition. In *Gore v. Indiana Insurance Co.*, the plaintiff filed a complaint "in which he asserted a claim for breach of contract based on defendants' alleged breach of the implied covenant of good faith and fair dealing." *Gore v. Indiana Insurance Co.*, 376 Ill. App. 3d 282, 285 (2007). The other case cited by plaintiffs, *Diamond v. United Food & Commercial Workers*, discussed the duty of good faith and fair dealing in the context of determining how much deference should be given to a union's president's interpretation of union bylaws. *Diamond v. United Food & Commercial Workers*, 329 Ill. App. 3d 519, 525-27 (2002). Moreover, we observe that plaintiffs' amended complaint specifically excluded any claims of negligence or breach of fiduciary duty that were in the original complaint, despite plaintiffs' current arguments on appeal that their claim was based on Beeland's "negligent or wrongful conduct" related to Refco CM's asset diversion. Indeed, in dismissing plaintiffs' reimbursement claim, the circuit court observed that plaintiffs made "no showing of misfeasance or breach of contract" by Beeland as to the October 2005 diversion of assets by Refco CM, nor was any "breach of fiduciary duty claim" pleaded in plaintiffs'

15

1-10-1440

complaint. After our own review of the record, we agree with these observations and find that the claim was properly dismissed.

### C. Tortious Interference

Plaintiffs next contend that they adequately pled a tortious interference claim against Rogers. A claim for tortious interference with a contractual relationship consists of the following elements: "(1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of the contract; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's conduct; and (5) damages." *Complete Conference Coordinators, Inc. v. Kumon North America, Inc.*, 394 Ill. App. 3d 105, 109 (2009).

Plaintiffs' tortious interference claim alleges that the "Confidential Private Placement Memorandum" is a contract that required the Private Fund's assets to be held in customer-segregated accounts and not commingled with the assets of another person. The Private Fund's assets, however, were transferred to Refco CM, an unregulated entity where the assets were kept in nonsegregated accounts in breach of the parties' contractual agreement. Plaintiffs claim Rogers induced a breach of contract by improperly transferring the Private Fund's assets to enrich himself personally.

The primary argument plaintiffs advance on appeal is that Rogers' role in the October 2005 asset diversion to Refco CM is disputed, and they persistently maintain that the circuit court resolved "sharply disputed issues of fact." Plaintiffs suggest that because Rogers had a certain level of involvement in Beeland's general matters, we must assume for purposes of the motion to

16

dismiss that Rogers was involved in the improper diversion of the Private Fund's assets and to find otherwise would be an improper finding of fact. We disagree. First, plaintiffs point to nothing to indicate that Rogers was involved in the improper asset diversion, save for his general involvement in Beeland. Second, evidence in the record plainly indicates that Price and Goodman were the individuals responsible for any asset transfer that occurred, and even then they only authorized an asset transfer to Refco, LLC, and not to Refco CM. Even Mercorella's affidavit, upon which plaintiffs rely, simply states that Rogers, as a 69% owner of Beeland, was regularly involved in its operations, but Mercorella was unaware of any involvement by Rogers in the relevant asset transfer. Third, testimony given by several individuals regarding the improper asset diversion itself corroborates the observation that Rogers had no involvement in the diversion of assets to Refco CM. Of the voluminous depositions and affidavits before the circuit court, including depositions by Beeland's managing members that directed the transfer to Refco, LLC, Richard Butt, a Refco executive familiar with the planned transfer, and evidence submitted by Refco CM in their own proceedings, Rogers was never alleged as being involved in any improper asset transfer. Plaintiffs' argument that Rogers must be responsible for the asset diversion to CM because of his mere involvement with Beeland is a conclusory statement based on suspicion and speculation, which this court finds insufficient to create a factual dispute. Despite plaintiffs' arguments that the circuit court improperly weighed evidence and made factual findings, the record indicates that the circuit court relied on the easily proven facts in the record, found a lack of evidence that might create a factual dispute, and ignored inferences that were based only on suspicion and speculation.

17

We also note that plaintiffs point to declarations of Clyde C. Harrison and Richard L. Chambers, minority members of Beeland, in support of their argument that Rogers was responsible for the Refco CM transfer. The declarations, however, were not presented before the circuit court during the hearings on the motion to dismiss, but only on the motion for reconsideration. Motions for reconsideration are meant to bring to a court's attention: (1) newly discovered evidence; (2) changes in the law; or (3) errors in the court's previous application of existing law. *River Plaza Homeowner's Ass'n v. Healey*, 389 Ill. App. 3d 268, 280 (2009). It is unclear how the declarations by Harrison and Chambers would constitute newly discovered evidence, as no reason is presented indicating the declarations could not have been procured prior to the hearings on the motion to dismiss. We have held that circuit courts " 'should not permit litigants to stand mute, lose a motion, and then frantically gather evidentiary material to show that the court erred in its ruling.' " *Universal Scrap Metals, Inc. v. J. Sandman & Sons, Inc.*, 337 Ill. App. 3d 501, 508 (2003) (quoting *Gardner v. Navistar International Transportation Corp.*, 213 Ill. App. 3d 242, 248 (1991)).

We observe, however, that while the circuit court denied plaintiffs leave to file the declarations in its order addressing plaintiffs' motion for reconsideration, an earlier circuit court order granted plaintiffs leave to file the same declarations. To the extent that the circuit court's inconsistency might allow us to examine the declarations by Harrison and Chambers, we nevertheless find that the declarations suffer similar infirmities as plaintiffs' claim does. The declarations establish only that Rogers was involved with Beeland and was aware that Refco CM would, at some point, hold the Private Fund's assets (consistent with the financial strategy

18

outlined by Beeland).  The remaining statements amount to nothing more than hearsay and inadmissible opinions that fail to support the claim that Rogers was responsible for the asset diversion to Refco CM or otherwise induced any breach of contract.  Accordingly, we find that the trial court properly dismissed plaintiffs' claim of tortious interference with a contract against Rogers.

### D.  Declaratory Judgment

Plaintiffs last contend that they adequately pled a declaratory judgment claim to survive dismissal under sections 2-615 and 2-619 of the Code.  Plaintiffs sought a declaratory judgment that: (1) the Private Fund and Beeland breached the Partnership Agreement by the "wrongful and unauthorized transfers" and by "failing and refusing to pay [plaintiffs] the balance of their capital accounts"; (2) defendants owe plaintiffs interest on the unpaid capital account amounts; (3) plaintiffs were improperly charged fees and expenses; and (4) Beeland and the Private Fund as obligated to distribute to plaintiffs distributions from recovery proceedings attributable the plaintiffs' investments that were improperly transferred to Refco.

The elements of a declaratory judgment action are: (1) a plaintiff having a legal, tangible interest; (2) a defendant having an opposing interest; and (3) the existence of an actual controversy between the parties concerning such interests.  *527 S. Clinton, LLC v. Westloop Equities, LLC*, 403 Ill. App. 3d 42, 53 (2010).  An actual controversy exists when "a concrete dispute admitting of an immediate and definitive determination of the parties' rights, the resolution of which will aid in the termination of the controversy or some part thereof." *Northern Trust Co. v. County of Lake*, 353 Ill. App. 3d 268, 273 (2004).

1-10-1440

We observe that the circuit court dismissed plaintiffs' complaint because "there was no authorization of the transfer to Refco CM" and elaborated no further. Plaintiffs argue that their claim raises issues which the trial court failed to address, and we agree. However, this does not necessitate an automatic reversal. In reviewing the circuit court's dismissal, this court may affirm the trial court's decision on any basis that appears in the record, regardless of whether the trial court relied upon such ground or whether its rationale was correct. *Bowers v. State Farm Mutual Automobile Insurance Co.*, 403 Ill. App. 3d 173, 176 (2010).

The first three items of plaintiffs' claim for declaratory judgment are simply reiterations of the other claims plaintiffs have made. Those claims were addressed by the circuit court in other parts of its order, and also reviewed by this court in the preceding discussions. The fourth issue, that the Private Fund and Beeland should distribute to plaintiffs any subsequent assets recovered, does not amount to a concrete controversy. First, it is undisputed, and supported by the record, that the Private Fund has distributed *pro rata* shares of all assets recovered from the various Refco CM recovery proceedings. Second, plaintiffs have conceded on appeal the Private Fund and Beeland have recovered and distributed more than 100% of the November 2005 value of plaintiffs' capital accounts. We find that no concrete dispute exists here regarding the distribution of plaintiffs' assets from any asset recovery proceeding, and we accordingly affirm the circuit court's dismissal of plaintiffs' claim.

### III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

20

1-10-1440

1-10-1440

| | |
|---|---|
| Please Use Following Form:<br><br>Complete TITLE of Case | IN THE<br>APPELLATE COURT OF ILLINOIS<br>FIRST JUDICIAL DISTRICT<br><br>TOM D. SEIP and ALEXA C. SEIP, ) Appeal from the<br>Cotrustees of the Tom and Alexa Seip Living ) Circuit Court of<br>Trust, CLARENCE RIDLEY and ELEANOR ) Cook County.<br>RIDLEY, On Their Own Behalf and On Behalf of )<br>All Others So Situated, )<br> )<br> Plaintiffs-Appellants, )<br> )<br> v. ) No. 07 CH 11719<br> )<br>ROGERS RAW MATERIALS FUND, L.P., an )<br>Illinois Limited Partnership; BEELAND )<br>MANAGEMENT COMPANY, L.L.C., an Illinois )<br>Limited Liability Company and General Partner of )<br>The Rogers Raw Materials Fund, and JAMES )<br>BEELAND ROGERS, JR., an Individual, ) Honorable<br> ) Mary K. Rochford,<br> Defendants-Appellees. ) Judge Presiding. |
| Docket No.<br><br>COURT<br><br>Opinion Filed | No. 1-10-1440<br>Appellate Court of Illinois<br>First District, FOURTH Division<br><br>March 10, 2011<br>(Give month, day and year) |
| JUSTICES | JUSTICE LAVIN delivered the judgment of the court, with opinion.<br>Gallagher, P.J., and Pucinski, J., concurred. |
| APPEAL from the Circuit Ct. of Cook County. | Lower Court and Trial Judge(s) in form indicated in the margin:<br>The Honorable Mary K. Rochford, Judge Presiding. |

| For APPELLANTS, John Doe, of Chicago.<br><br>For APPELLEES, Smith and Smith of Chicago, Joseph Brown, (of Counsel)<br><br>Also add attorneys for third-party appellants or appellees. | Indicate if attorney represents APPELLANTS or APPELLEES and include attorneys of counsel. Indicate the word NONE if not represented.<br><br>Attorneys for **Plaintiffs/Appellants:**<br><br>Leigh R. Lasky, Amelia S. Newton, Norman Rifkind<br>Lasky & Rifkind, Ltd.<br>350 N. LaSalle St., Suite 1320<br>Chicago, IL 60610<br>312.634.0057<br><br>A. Stephens Clay, Stephen E. Hudson<br>Kilpatrick Stockton LLP<br>1100 Peachtree St., Suite 2800<br>Atlanta, Georgia 30309-4528<br>404.815.6500<br><br>Everette L. Doffermyre<br>Doffermyre, Shields, Canfield, & Knowles, LLC<br>1355 Peachtree St., Suite 1600<br>Atlanta, Georgia 30309<br>404.881.8900<br><br>Attorneys for **Defendat/Appellee James B. Rogers, Jr.**:<br><br>Aaron Rubinstein<br>Kaye Scholer LLP<br>425 Park Avenue<br>New York, NY 10022<br>212.836.8000<br><br>Anthony G. Stamato, Robert M. Spalding<br>Kaye Scholer LLP<br>70 W. Madison St., Suite 4100<br>Chicago, IL 60602<br>312.583.2300<br><br>Attorneys for **Defendats/Appellees Beeland Mgmt. Co., LLC & The Rogers Raw Materials Fund, L.P.:**<br><br>Thomas K. Cauley, Jr., Matthew B. Kilby, Claire M. Korenblit<br>Sidley Austin LLP<br>One South Dearborn<br>Chicago, IL 60603<br>312.853.7000 |
|---|---|