# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Dixon, Laukitis & Downing, P.C. v. Busey Bank*, 2013 IL App (3d) 120832

---

| | |
|---|---|
| Appellate Court Caption | DIXON, LAUKITIS AND DOWNING, P.C., Plaintiff-Appellant, v. BUSEY BANK, Defendant-Appellee. |
| District & No. | Third District<br>Docket No. 3-12-0832 |
| Filed | July 31, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Plaintiff's complaint alleging that defendant bank breached its duty of ordinary care in connection with a fraudulent check plaintiff deposited and drew against that was later found not to be collectible was properly dismissed for failure to state a cause of action, since the bank had no duty to investigate the check's genuineness or to tell plaintiff that it could be counterfeit, the account agreement was satisfied, the agreement was not unreasonable, and the complaint was barred by the *Moorman* doctrine that no recovery could be had for a solely economic loss under a tort theory. |
| Decision Under Review | Appeal from the Circuit Court of Peoria County, No. 12-L-8; the Hon. David J. Dubicki, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal    William R. Kohlhase (argued) and Joshua Herman, both of Miller, Hall & Triggs, of Peoria, for appellant.

Joseph B. VanFleet (argued) and Emily H. Wilburn, both of VanFleet Law Offices, of Peoria, for appellee.

Panel    JUSTICE O'BRIEN delivered the judgment of the court, with opinion.

Justices Carter and McDade concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff Dixon, Laukitis, & Downing, P.C. (DLD), filed this negligence action against defendant Busey Bank, alleging that Busey breached a duty of ordinary care it owed DLD regarding a fraudulent check DLD deposited and drew against, which was later determined to be uncollectible. The trial court dismissed the complaint on Busey's motion and DLD appealed. We affirm.

¶ 2    FACTS

¶ 3    Plaintiff Dixon, Laukitis & Downing, P.C., is a law firm that maintained its client trust account at defendant Busey Bank. On May 25, 2011, DLD deposited into its trust account a check from one of its clients in the amount of $350,000. The check was drawn on the account of Intact Insurance Company at Royal Bank of Canada in Toronto, Ontario. The check was marked, "US Funds" and "This Cheque contains a true security watermark–hold at an angle to view." On June 6, 2011, DLD transferred $210,000 from its trust account to the client who provided the $350,000 check. On June 8, 2011, DLD transferred $60,000 from the trust account to the client. On June 10, 2011, the check was returned to Busey uncollected, and Busey notified DLD and charged back $350,000 to DLD's account the same day.

¶ 4    DLD filed a complaint sounding in negligence in January 2012. After the complaint was dismissed without prejudice for failure to state a claim (735 ILCS 5/2-615 (West 2010)), DLD filed an amended complaint in April 2012. In its amended complaint, DLD alleged that Busey owed it "a duty to act with ordinary care by observing such reasonable commercial standards as prevail in the area where the Bank conducts business" and that the Bank breached its duty by failing to inquire as to the circumstances of how DLD acquired the check; to recognize the check as counterfeit and inform DLD; to advise DLD that funds should not be withdrawn until final payment given the nature of the check and the account; and to notify DLD at the "earliest time it knew or should have known that the Check would

not be paid by the drawee bank."

¶ 5        Busey filed a motion to dismiss under section 2-619.1 of the Code of Civil Procedure (Civil Code) (735 ILCS 5/2-619.1 (West 2010)), arguing that dismissal was proper under section 2-615 (735 ILCS 5/2-615 (West 2010)) based on the insufficiency of facts to support a negligence claim and under section 2-619 (735 ILCS 5/2-619 (West 2010)) on the basis that the *Moorman* doctrine precluded recovery. See *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill. 2d 69 (1982). Attached to its motion to dismiss was the account agreement DLD executed with Busey when the law firm established the client trust account. The agreement provided that it was subject to all applicable state and federal laws, except where varied in the agreement, and that the account holders "agree to be jointly and severally (individually) liable for any account shortage resulting from charges or overdrafts." The agreement further stated, in pertinent part: "DEPOSITS–We will give only provisional credit until collection is final for any items, other than cash, we accept for deposit (including items drawn 'on us')." Also attached to Busey's motion to dismiss was the affidavit of Daniel Daly, executive vice president/market president of Busey Bank. He attested "[t]here was nothing on the face of this Check that gave any indication that it may not be genuine or that it may be dishonored"; the check complied with the requirements for a negotiable instrument under section 3-104 of the Uniform Commercial Code (UCC) (810 ILCS 5/3-104 (West 2010)); the Bank provided written and oral notice to DLD on June 10, 2011, the same day the Bank was informed the check was uncollectible; and the Bank charged back $350,000 against DLD's account per the account agreement.

¶ 6        A hearing took place on the Bank's motion to dismiss and the trial court issued a verbal ruling granting the motion. Thereafter, the trial court issued a written order granting the section 2-615 motion to dismiss and declining to address the section 2-619 motion to dismiss. The trial court stated the motion to dismiss was granted "for all the reasons stated by the Court in its verbal Ruling from the Bench." The record on appeal does not contain a transcript from the hearing. The trial court also issued a supplemental order in which it found that Busey did not owe DLD a duty under the common law because the UCC provides a comprehensive remedy for check processing which places the risk of loss on the depositor until final collection. In a supplemental order, the trial court also held that DLD's complaint was barred under the *Moorman* doctrine. DLD appealed.

¶ 7                                              ANALYSIS

¶ 8        The issue on appeal is whether the trial court erred when it granted Busey's motion to dismiss DLD's negligence complaint. DLD argues that it alleged facts satisfying each element of a negligence action and dismissal of its complaint should be reversed. According to DLD, Busey owed it a duty of ordinary care under the common law and the UCC, breached its duty, and caused DLD damages. DLD argues that issues of fact as to whether Busey acted consistent with reasonable commercial standards in the local area exist and preclude judgment on the pleadings. Lastly, DLD submits that the UCC does not supplant Busey's common law duty of ordinary care and that the *Moorman* doctrine does not preclude its negligence action against Busey.

¶ 9    A section 2-619.1 (735 ILCS 5/2-619.1 (West 2010)) motion to dismiss is a hybrid motion combining grounds for dismissal under sections 2-615 and 2-619 (735 ILCS 5/2-615, 2-619 (West 2010)). A section 2-615 motion admits all well-pleaded facts and attacks the legal sufficiency of the complaint. *Seip v. Rogers Raw Materials Fund, L.P.*, 408 Ill. App. 3d 434, 438 (2011). A section 2-615 dismissal is proper where it is apparent the plaintiff cannot prove any set of facts entitling him to relief. *Seip,* 408 Ill. App. 3d at 438. Under section 2-615, the test is " 'whether the allegations of the complaint, when viewed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted.' " *Seip*, 408 Ill. App. 3d at 438 (quoting *Canel v. Topinka*, 212 Ill. 2d 311, 317 (2004)). A section 2-619 motion admits the legal sufficiency of the complaint and asserts affirmative matters defeating the claims. *Seip*, 408 Ill. App. 3d at 438. The test on review of a dismissal under section 2-619 is "whether a genuine issue of material fact exists and whether the defendant is entitled to a judgment as a matter of law." *Seip*, 408 Ill. App. 3d at 438. When considering a dismissal under either section 2-615 or section 2-619, the reviewing court must accept as true all well-pleaded facts as well as all reasonable inferences arising from the facts. *Zahl v. Krupa*, 365 Ill. App. 3d 653, 658 (2006). Our review is *de novo*. *Zahl*, 365 Ill. App. 3d at 658.

¶ 10    To sustain a negligence action, the plaintiff must establish that the defendant owed it a duty, the defendant breached its duty, and the plaintiff was damaged as a result of the breach. *Ward v. K mart Corp.*, 136 Ill. 2d 132, 140 (1990). The existence of a duty is a question of law to be determined by the trial court. *Ward*, 136 Ill. 2d at 140. The UCC governs the relationship between a bank and its customer. *Napleton v. Great Lakes Bank, N.A.*, 408 Ill. App. 3d 448, 451 (2011). The principles of law and equity supplement the UCC unless they are displaced by a particular provision in the UCC. 810 ILCS 5/1-103(b) (West 2010). Article 4 of the UCC governs bank deposits and collections. 810 ILCS 5/4-101 *et seq.* (West 2010). It sets forth a bank's general duty to exercise ordinary care and states that "action or non-action approved by this Article *** is the exercise of ordinary care and, in the absence of special instructions, action or non-action consistent *** with a general banking usage not disapproved by this Article, is prima facie the exercise of ordinary care." 810 ILCS 5/4-103(c) (West 2010).

¶ 11    A bank that takes an item is a "Depository Bank" and a bank that handles an item for collection and is not a drawee of the draft is a "Collecting Bank." 810 ILCS 5/4-105 (West 2010). A collecting bank acts as an agent of an item's owner until final settlement of the item and "any settlement given for the item is provisional." 810 ILCS 5/4-201(a) (West 2010). In addition, a collecting bank has a superior right over the item's owner to a setoff if an item does not settle. 810 ILCS 5/4-201(a) (West 2010).

¶ 12    The UCC does not enumerate duties for a depository bank but section 4-202 sets forth the responsibilities for a collecting bank as follows:

"(a) A collecting bank must exercise ordinary care in:

(1) presenting an item or sending it for presentment;

(2) sending notice of dishonor or nonpayment or returning an item other than a documentary draft to the bank's transferor after learning that the item has not been

-4-

paid or accepted, as the case may be;

 (3) settling for an item when the bank receives final settlement; and

 (4) notifying its transferor of any loss or delay in transit within a reasonable time after discovery thereof.

 (b) A collecting bank exercises ordinary care under subsection (a) by taking proper action before its midnight deadline following receipt of an item, notice, or settlement." 810 ILCS 5/4-202(a), (b) (West 2010).

Section 4-214(a) provides that a collecting bank may charge back a customer's account when the bank makes provisional settlement but does not receive final payment on an item if the collecting bank gives notice to its customer by midnight of the next banking day. 810 ILCS 5/4-214(a) (West 2010).

¶ 13 Provisions such as section 4-202 of the UCC displace common law negligence principles; UCC compliance is nonnegligent as a matter of law. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Devon Bank*, 702 F. Supp. 652, 665 (N.D. Ill. 1988). The standards set forth in section 4-202 are "a restatement" of the common law negligence standard in that they define the applicable standard of care. *Merrill Lynch*, 702 F. Supp. at 660. The UCC's provisions may also be varied by an agreement of the parties but a bank's responsibility for its failure to exercise ordinary care cannot be disclaimed. 810 ILCS 5/4-103(a) (West 2010); *Scott Stainless Steel, Inc. v. NBD Chicago Bank*, 253 Ill. App. 3d 256, 260-61 (1993). An agreement between the parties may set forth the standards to measure the bank's responsibility so long as the standards are not manifestly unreasonable. 810 ILCS 5/4-103(a) (West 2010). The relationship between a bank and its account holders is contractual in nature and one of creditor and debtor. *Continental Casualty Co. v. American National Bank & Trust Co. of Chicago*, 329 Ill. App. 3d 686, 692 (2002). An account holder agreement executed between a bank and its customer creates a binding contract. *Continental Casualty Co.*, 329 Ill. App. 3d at 692. Under the common law, a collecting bank does not owe a duty to its customer to inspect a check later determined to be counterfeit. *Sibley v. Central Trust Co. of Illinois*, 226 Ill. App. 180, 186 (1922).

¶ 14 We first determine whether Busey owed DLD a duty and whether the complaint states a cause of action for negligence. In its first amended complaint, DLD alleges that Busey owed it a duty to act with ordinary care by observing prevailing reasonable commercial standards, a duty DLD maintains arises from the common law as directed by the UCC. It looks to the definition of ordinary care set forth in the general definitions of article 4 of the UCC as support for its claim. According to DLD, since neither the UCC nor the account agreement provides specific standards governing Busey's conduct concerning processing a foreign check suspected to be counterfeit, the common law standards, like the general UCC provisions, provide that the duty of ordinary care owed by Busey to DLD is the observance of reasonable commercial standards.

¶ 15 We disagree with DLD's conclusion that Busey owed it a common law duty of reasonable care. Under the facts as set forth in DLD's amended complaint and available in the record, the duty owed to DLD by Busey was defined under the parties' account agreement and the UCC. The account agreement placed the risk of loss on DLD until final settlement

of the $350,000 check. This provision applied whether Busey acted as a depository bank or a collecting bank. The language in the agreement tracks the risk of loss language of the UCC. DLD opted to write checks based on the $350,000 deposit before final settlement. The terms of the account agreement did not require Busey to investigate the genuineness of the check or specially warn DLD not to rely on the funds until the deposited check settled. Because DLD bore the risk of loss under the agreement, it cannot state a claim for the Bank's negligence based on its own withdrawal of funds before the check was finally settled. Moreover, as stated under the account agreement, applicable UCC provisions also governed the responsibilities between the parties. As a collecting bank, Busey's duties were enumerated in section 4-202 of the UCC. In its amended complaint, DLD did not allege that Busey breached any duties under section 4-202 in collecting or processing the counterfeit check. Rather, DLD alleged that Busey failed to exercise ordinary care in that it did not follow prevailing reasonable commercial banking standards, which it asserts includes investigating the circumstances regarding the check, recognizing it as counterfeit, advising DLD not to withdraw funds until final settlement, and notifying DLD at the earliest time that it was dishonored.

¶ 16       DLD maintains that the section 4-202 ordinary care standard only applies to the timeliness of the actions and not to whether they were performed in accordance with the ordinary care. We disagree. Under section 4-202, a collecting bank exercises ordinary care when it presents an item, sends notice of dishonor, finally settles an item, or timely notifies the transferor of any delay by performing such actions before midnight following receipt, notice or settlement of an item. DLD seeks to add an additional duty of ordinary care under the common law to supplement these specific standards. Contrary to DLD's claims, the UCC displaces common law duties for a collecting bank. As the trial court noted, the UCC provides a comprehensive plan for the processing of checks. Where, like here, its specific provisions set forth standards regarding particular banking practices, they displace the ordinary care standard under the common law. In the amended complaint, DLD does not assert that Busey failed to timely perform any section 4-202 duties of a collecting bank, including notifying DLD before the midnight deadline that the check was dishonored.

¶ 17       The cases offered by DLD do not compel a different determination. In *Mutual Services Casualty Insurance Co. v. Elizabeth State Bank*, 265 F.3d 601, 614 (7th Cir. 2001), a customer's breach of contract claim against a bank that allowed the customer's employee to cash checks on an account on which he was not authorized was based on the bank's common law duty to its customer. In *Mutual Services*, neither the account agreement nor any specific provisions of the UCC governed the duty of the bank concerning the circumstances at issue. *Mutual Services*, 265 F.3d at 613-14. Here, in contrast, the account agreement and the UCC spelled out the standards constituting ordinary care. In *Greenberg, Trager & Herbst, LLP v. HSBC Bank USA*, 958 N.E.2d 77 (N.Y. 2011), a case on which Busey also relies, the plaintiff law firm fell victim to an international check scam similar to that in the instant case. The law firm filed an action alleging negligence, in part, against the depository/collecting bank and the payor. *Greenberg*, 958 N.E.2d at 80-81. As in *Mutual Services*, there were no specific provisions under the parties' account agreement or the UCC governing the circumstances at issue and the bank presented evidence that its action complied with the duty of ordinary care

as defined through custom and practice of the banking industry. *Greenberg*, 958 N.E.2d at 85-86.

¶ 18        In our view, *Greenberg* supports Busey's position. The *Greenburg* court recognized that pursuant to section 2-214(a) of the UCC, the risk of loss remained with the law firm until the check was finally settled with the bank. *Greenberg*, 958 N.E.2d at 87. Both the UCC and the account agreement in the instant case place the risk of loss on DLD until the check finally settled. The Daly affidavit establishes that the check on its face did not indicate it was counterfeit and that the check satisfied the requirements necessary for a negotiable instrument. Daly also attested that DLD was notified the check was uncollectible the same day Busey learned it was dishonored. DLD did not offer any facts in its amended complaint or in response to Busey's motion to dismiss that dispute Daly's statements or that Busey did not timely satisfy the responsibilities of a collecting bank under the UCC, including notice before the midnight deadline that the check was dishonored.

¶ 19        We consider that DLD's common law negligence claim cannot be sustained. Busey owed DLD no other duties aside from those set forth in the account agreement and the UCC. The amended complaint fails to allege that Busey breached any duties under the account agreement or the UCC. On these facts, DLD cannot present allegations sufficient to establish any common law duty. Even if the account agreement and the UCC did not apply, there is no duty under the common law to inspect a check for genuineness or to remind customers that they bear the risk of loss before a deposited check is finally settled. We find that the trial court's dismissal of the complaint for failure to state a claim was not in error. Timely compliance with the section 4-202 responsibilities constitutes ordinary care per the UCC and is not negligent as a matter of law. The facts establish that Busey processed the check per its standard methods, received notice the check was uncollectible on June 10, and informed DLD the same day. In addition to complying with the terms of the agreement, Busey also timely complied with the UCC provisions concerning the responsibilities of a collecting bank. Contrary to DLD's assertions, Busey had no duty under the agreement or the UCC to investigate the genuineness of the check or to inform DLD that it could be counterfeit. Because DLD cannot allege that Busey failed to comply with the account agreement, it must establish that its terms are manifestly unreasonably, a claim it did not allege in its complaint and which these facts cannot sustain.

¶ 20        The trial court also dismissed DLD's complaint under section 2-619 of the Civil Code, finding that the complaint was precluded by the *Moorman* doctrine. Under the *Moorman* doctrine, a plaintiff cannot recover for solely economic loss under a tort theory of negligence. *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill. 2d 69, 91-92 (1982). The doctrine was extended to services, and claims against a service provider are barred where the "duty of the party performing the service is defined by the contract that he executes with his client." *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 159 Ill. 2d 137, 162 (1994). The reasoning behind the rule is that tort law provides a remedy for losses from personal injuries or property damages, and contract law and the UCC provide remedies for economic losses resulting from diminished commercial expectations without personal injury or property damage. *In re Illinois Bell Switching Station Litigation*, 161 Ill. 2d 233, 241 (1994). An exception applies to service providers, such as attorneys or accountants, where

their duty arises outside of the contract; under those circumstances the *Moorman* doctrine does not preclude a claim based solely on economic loss. *Congregation of the Passion*, 159 Ill. 2d at 161.

¶ 21 As discussed above, the account holder agreement between DLD and Busey formed a contract, which incorporated the applicable UCC provisions and defined the parties' responsibilities. DLD relies on *Mutual Service Casualty Insurance Co. v. Elizabeth State Bank*, 265 F.3d 601, 618 (7th Cir. 2001) as support for its claim that Busey owed it a duty outside the contract that was amenable to a tort action. In *Mutual Service*, the reviewing court declined to decide the issue but suggested that the implied duty of ordinary care implicit in every contract under common law "may well support an exception from *Moorman*." *Mutual Service Casualty Insurance Co.*, 265 F.3d at 619. It looked to the extracontractual duty owed by an attorney or accountant that precludes application of the *Moorman* doctrine to malpractice claims and reasoned that banks owe a similar common law duty of care to its customers. *Mutual Service Casualty Insurance Co.*, 265 F.3d at 618. We consider *Mutual Service* is distinguished in that it relied on a provision of the UCC that did not delineate Busey's responsibilities or standard of care. *Mutual Service Casualty Insurance Co.*, 265 F.3d at 616-17. Where, as here, the account agreement and UCC set forth Busey's duties and define ordinary care, there is no extracontractual relationship. Because DLD is claiming solely economic loss, it cannot pursue a tort action under the *Moorman* doctrine. We find that the trial court properly dismissed the complaint under section 2-619.

¶ 22 For the foregoing reasons, the judgment of the circuit court of Peoria County is affirmed.

¶ 23 Affirmed.