2025 IL App (1st) 250258-U

FIFTH DIVISION
October 24, 2025

No. 1-25-0258

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| LEARCO HOSPITALITY, LLC, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 24 L 3311 |
| | ) | |
| FEDERICO COMACCHIO, | ) | Honorable |
| | ) | Thomas Moore Donnelly, |
| Defendant-Appellee. | ) | Judge Presiding. |

_____

JUSTICE MIKVA delivered the judgment of the court.
Presiding Justice Mitchell and Justice Oden Johnson concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The circuit court's dismissal of plaintiff hospitality company's complaint is affirmed where plaintiff failed, under various theories, to state a claim for breach of contract or violation of the Limited Liability Company Act against the chef hired to run its restaurant.

¶ 2   Plaintiff Learco Hospitality, LLC (Learco) appeals the dismissal of its third amended complaint against defendant Federico Comacchio pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2024)). The four-count complaint listed over twenty ways in which Mr. Comacchio's performance as executive chef in its restaurant was unsatisfactory and

allegedly constituted breaches of: an oral promise to use "sound business practices," the implied covenant of good faith and fair dealing, and an implied term in its operating agreement. Learco also claimed that Mr. Comacchio violated the Limited Liability Company Act (LLC Act) (805 ILCS 180/1-1 *et seq.* (West 2024)) by working for a competitor, enriching himself at the expense of the company, and breaching a fiduciary duty of care. On appeal, Learco argues that it alleged facts sufficient to state each of its claims and that the circuit court erred as a matter of law in concluding otherwise. For the reasons that follow, we disagree and affirm the decision of the circuit court.

¶ 3                                    I. BACKGROUND

¶ 4      Learco alleged the following facts in its complaint which, for purpose of reviewing a dismissal under section 2-615, we take as true. *Bonhomme v. St. James*, 2012 IL 112393, ¶ 34. Learco is an Illinois limited liability company (LLC) which operated an upscale Italian restaurant in Chicago. Mr. Comacchio and a corporation controlled by an investor in Italy (the Investor) were its two members, with the latter controlling 85% of the LLC.

¶ 5      Prior to Learco's formation, sometime in late 2016, the Investor met with Mr. Comacchio in Chicago and discussed the possibility of working together to open the new restaurant. Mr. Comacchio made several representations about his work experience as an executive chef at popular restaurants. According to Learco, "[Mr. Comacchio] said words to the effect that he would use the good business techniques he had learned over the past 20+ years in order to manage the start-up and its operations as a well-run business in accordance with sound business practices."

¶ 6      These discussions continued into 2017, when the Investor and Mr. Comacchio agreed to open a restaurant together. They searched for a potential site and engaged a design firm to provide preliminary plans for the restaurant. On January 26, 2018, Articles of Organization were filed with

the Illinois Secretary of State, and Learco was officially formed as an LLC.

¶ 7     On March 19, 2018, the Investor and Mr. Comacchio signed a Letter of Intent (LOI), drafted by their attorneys, which outlined the general nature of their business relationship but "with the details to be filled in pursuant to their earlier and subsequent agreements." The LOI listed the following as Mr. Comacchio's duties: (1) "[t]ake any necessary actions to open the Restaurant within one year of the Company's date of organization," (2) provide weekly reports and updates about the progress of the restaurant, (3) comply with the terms of the Operating Agreement, 4) select the kitchen and waiting staff, (5) obtain all necessary licenses and permits, (6) maintain all necessary licenses and permits, (7) "[p]urchase ingredients and food supplies, organize, direct, and supervise kitchen activities according to the choice of the various regional and seasonal menus of Italian cuisine," and (8) "[e]nsure the economic and financial results ('Results') according to the business plan attached ***." The parties stipulated under this final duty that if the anticipated Results were not achieved within five years of the Company's organization, they would "redefine the business plan" and "negotiate a new Salary for [Mr. Comacchio] *** which may be reduced as a consequence of the failure to achieve the Results." No business plan was attached to the LOI.

¶ 8     Additionally, the LOI contained a noncompetition clause which prohibited Mr. Comacchio from working in any way with competing companies for 12 months following termination of the operating agreement or the relationship between its members. The clause also noted, "In the event, for any reason, the Restaurant will not be opened on or before June 30, 2019, [Mr. Comacchio] shall be bound by his noncompetition obligation until December 31, 2019."

¶ 9     Three similar operating agreements were subsequently drafted. The first operating agreement appears unsigned and undated in the record. The second was signed and dated June 1, 2019, and notes that the first agreement was executed on November 15, 2018. The third and final,

and thus the operative operating agreement was signed on January 11, 2020. The final operating agreement specifically references the LOI, noting, " 'Letter of Intent' means the Letter of Intent entered into by and between Federico Comacchio and [the Investor] dated March 19, 2018, which evidences the joint venture between the parties in connection with the establishment and operation of an Italian restaurant in the City of Chicago." Paragraph 4.6 also references a separate "employment agreement," which was apparently never drafted. The operating agreement contained little information about Mr. Comacchio's responsibilities, with the exception of a clause that read "Each manager shall perform its duties and responsibilities hereunder in such manner as he or she shall deem to be in the best interests of the Company and its members ***."

¶ 10    The first two operating agreements contained the following integration clause:

> "This [Operating] Agreement and the Letter of Intent contain all of the understandings and agreements of whatsoever kind and nature existing between the parties hereto with respect to the matters dealt with in this Agreement and the rights, interests, understandings, agreements and obligations of the respective parties pertaining to the Company. Any and all prior agreements between the parties with respect to such subject matter are hereby superseded. Time is of the essence of this Agreement. To the extent of a conflict between this Agreement and the Letter of Intent, the terms of this Agreement shall control."

The third operating agreement included this same integration clause, though the last sentence was changed to instead provide, "To the extent of a conflict between this Agreement and the Letter of Intent, the terms of the Letter of Intent shall control."

¶ 11    The restaurant opened on June 26, 2021. Mr. Comacchio worked as the executive chef of the restaurant from its opening until he tendered his resignation on October 19, 2023, with an effective date of November 20, 2023.

¶ 12   On March 27, 2024, Learco filed its first complaint against Mr. Comacchio. Learco's third amended complaint, the operative pleading, was filed on November 21, 2024, and alleges breaches or violations of (1) an oral contract to use "sound business practices," (2) the implied covenant of good faith and fair dealing, (3) an implied term of the contract "that [Mr. Comacchio] would follow sound business practices," and (4) several provisions of the LLC Act. In paragraph 22, the complaint listed twenty ways in which Mr. Comacchio allegedly failed to "properly perform his duties to [Learco] under the employment agreement." The specific allegations in that paragraph are that Mr. Comacchio:

"a.     Did not oversee the Restaurant's general email inbox, resulting in thousands of unanswered emails including vendor requests for payment and event inquiries.

b.     Did not consistently submit daily operation reports or POS reports.

c.     Did not timely and consistently submit monthly reports.

d.     Did not consistently follow through with assignments made to and accepted by him at operations meetings.

e.     Did not recognize or deal with sound issues in the Restaurant's dining room.

f.     Ordered uniforms without consultation with the Restaurant's outside consultant, which led to a second order for redesigned uniforms.

g.     Did not follow protocols established in connection with a switch in reservation systems.

h.     Did not cause vendors to be timely paid.

i.     Refused to use electronic payment of vendors.

j.     Added vendor payments to months that had been closed, thereby distorting financial reporting.

5

k.      Did not work sufficient hours (for example, in the kitchen on slow nights),

thereby increasing labor costs to pay for others.

l.      On occasion, left the Restaurant early.

m.      Did not properly adjust staff schedules to bring labor costs to budget.

n.      Included too many specials and dishes on the menu, thereby increasing costs.

o.      Did not ensure that the POS system consistently included sales taxes, resulting in

undercharges.

p.      Mismanaged food and beverage inventories.

q.      Delayed in marketing tasks, including approval and ordering of collateral items.

r.      Did not follow company policy in dealing with customer rating matters.

s.      Did not work appropriately with the Company's PR firm, causing it to resign.

t.      Left his employment without notice."

¶ 13    On December 5, 2024, Mr. Comacchio moved to dismiss Learco's claims pursuant to section 2-615, arguing that no actionable oral contract existed and that even if one did, enforcement of such an agreement was precluded by the integration clause in the parties' written agreements. Mr. Comacchio also argued that there is no independent cause of action for breach of the implied covenant of good faith and fair dealing and no legal basis for the court to read an implied term into the parties' written agreements. Additionally, the noncompetition clause in the LOI, incorporated by reference into the operating agreement, superseded any of Mr. Comacchio's obligations under the LLC Act and had expired in December 2019, well before he was alleged to have worked with Learco's competitors.

¶ 14    The circuit court heard argument and dismissed Learco's complaint in its entirety. The court found the alleged oral contract was too vague to be enforceable. The court ruled there could

be no breach of any implied covenant of good faith and fair dealing or another implied term because Learco had not alleged that there was a breach of the written agreement and breach of an implied duty could not exist as a standalone cause of action. The court also found that the statutory requirements of LLC Act were displaced by the operating agreement.

¶ 15    This appeal followed.

¶ 16                                    II. JURISDICTION

¶ 17    The circuit court dismissed the third amended complaint with prejudice on January 9, 2025. Learco timely filed a notice of appeal on February 10, 2025. This court has jurisdiction pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) and Rule 303 (eff. July 1, 2017), governing appeals from final judgments entered by the circuit court in civil cases.

¶ 18                                    III. ANALYSIS

¶ 19    A section 2-615 motion to dismiss is a challenge to the legal sufficiency of a complaint. *Wakulich v. Mraz*, 203 Ill. 2d 223, 228 (2008). "The critical inquiry is whether the allegations of the complaint, when considered in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief may be granted." *Jarvis v. South Oak Dodge, Inc*., 201 Ill. 2d 81, 86 (2002). The court must accept all well-pleaded facts in the complaint as true. *Wakulich*, 203 Ill. 2d at 228. "Thus, a cause of action should not be dismissed pursuant to section 2-615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery." *Marshall v. Burger King Corp*., 222 Ill. 2d 422, 429 (2006). The standard of review for section 2-615 dismissals is de novo. *Id*.

¶ 20                        A. Breach of a Separate Oral Contract

¶ 21    Count I of Learco's complaint alleges breach of an oral contract entered into in 2017 in which Mr. Comacchio allegedly promised to employ "sound business practices" in his role as

executive chef of the parties' restaurant. Learco focuses much of its argument on why the elements of a contract were successfully pleaded and why "sound business practices" is an ascertainable standard. But we need not address whether the existence of this contract was properly pleaded or whether the circuit court was correct in finding the promise was too vague to be enforceable because its enforceability is clearly precluded by the integration clause in the subsequent operating agreements, and specifically the third amended operating agreement that the parties signed on January 11, 2020.

¶ 22    A court's goal in a contract dispute is to determine and give effect to the parties' intent when they contracted. *Greggs USA, Inc. v. 400 East Professional Associates, LP*, 2021 IL App (1st) 200959, ¶ 13. When parties include a formal integration clause in a contract, they are explicitly manifesting their intention to bind themselves to the terms of the written agreement, making it clear that any prior agreement or negotiations leading to the written contract are not the agreement. *In re Marriage of Lewin*, 2018 IL App (3d) 170175, ¶ 13 (citing *Air Safety, Inc. v. Teachers Realty Corp.*, 185 Ill. 2d 457, 464 (1999)). The integration clause here applies to "the matters dealt with in this Agreement and the rights, interests, understandings, agreements and obligations of the respective parties pertaining to the Company." It notes, "[a]ny and all prior agreements between the parties with respect to such subject matter are hereby superseded." Any alleged promise Mr. Comacchio made prior to the execution of the operating agreement, including those in the alleged oral contract, was therefore superseded by the duties and standards set forth in the operating agreement and LOI.

¶ 23    Learco argues that the language in the integration clause limits its scope only "to the matters dealt with in this Agreement," which it insists does not "set a standard for [Mr. Comacchio's] performance." Learco is correct that the operating agreement itself deals primarily

with the organization and financing of the LLC rather than performance standards. But contracts are to be read as a whole, with each provision viewed in light of the other provisions. *Eckhardt v. Idea Factory, LLC*, 2021 IL App (1st) 210813, ¶ 20. Mr. Comacchio's rights and obligations as a manager of Learco, set forth in the operating agreement, are inextricably linked to his role of, and duties as, executive chef. In addition, the operating agreement incorporated the LOI, which did lay out Mr. Comacchio's duties. Learco's attempts to parse Mr. Comacchio's obligations to the Company and his performance as an executive chef fails.

¶ 24    Learco directs us to cases holding that a separate oral agreement may be enforceable even in the face of a written contract with an integration clause if it is "so far a separate and distinct matter as to be capable of existence as an independent legal act." *Midwest Builder Distributing, Inc. v. Lord & Essex, Inc*., 383 Ill. App. 3d 645, 662 (2007). But the alleged oral agreement about Mr. Comacchio's performance as executive chef that Learco seeks to enforce is not separate and distinct from the operating agreement and LOI. These two written agreements clearly both dealt with management of the restaurant and, accordingly, Mr. Comacchio's role as executive chef. The operating agreement specifically provides, "Notwithstanding any language to the contrary, [Mr. Comacchio] shall have the required authority to operate the day to day operations of the Company's Business as expressly set forth in the Letter of Intent." The LOI sets forth Mr. Comacchio's specific duties, including that he purchase ingredients and food supplies, hire kitchen and wait staff, and provide regular progress reports. Although the operating agreement references both the LOI and an employment agreement, if the parties intended to draft a separate employment agreement to supplement or amend the responsibilities and standards enumerated in the LOI and operating agreement, they never actually did so, and the language in the operating agreement— including its broad integration clause—is the last word on the subject of Mr. Comacchio's

employment. No oral agreement as to what specific duties and obligations he had can be enforced.

¶ 25        B. Breach of the Implied Covenant of Good Faith and Fair Dealing

¶ 26    Count II of Learco's complaint alleges that the implied covenant of good faith and fair dealing "was breached by [Mr. Comacchio's] inattention to his duties as an employee." According to Learco, Mr. Comacchio engaged in a course of conduct, enumerated in paragraph 22 of the complaint, that was inconsistent with a good faith effort to fulfill his "general obligation to act as executive chef." Learco is arguing that, viewed in light of the covenant of good faith and fair dealing, the parties understood Mr. Comacchio's general duty to serve as executive chef to include a number of additional obligations, including, for example, responding in a timely fashion to the restaurant's email and maintaining an appropriate sound level in the dining room.

¶ 27    But this claim fails because Learco cannot rely on the duty of good faith and fair dealing to create new duties that are not enumerated in the contract. The duty of good faith and fair dealing is implied in every contract. *Seip v. Rogers Raw Materials Fund, L.P.*, 408 Ill. App. 3d 434, 443 (2011). It mandates that a party given contractual discretion must exercise that discretion in a reasonable manner, without arbitrariness, capriciousness, or in a way that conflicts with the reasonable expectations of the parties involved. *Id*. The purpose of the duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted. *McCleary v. Wells Fargo Securities, L.L.C.*, 2015 IL App (1st) 141287, ¶ 19.

¶ 28    The covenant, however, is not an independent source of duties for the parties to a contract. *Seip*, 408 Ill. App. 3d at 443. Rather, it is " 'used as a construction aid in determining the intent of the parties where an instrument is susceptible of two conflicting constructions.' " *Id.* (quoting *Fox v. Heimann*, 375 Ill. App. 3d 35, 42 (2007)). Vague notions of unfair dealing not tethered to a specific provision of the contract are simply not actionable. See *Anderson v. Burton Associates,*

*Ltd.*, 218 Ill. App. 3d 261, 267 (1991) (stating that there was no violation of the implied covenant of good faith where the case did not concern an exercise of discretion and the agreement at issue did not "beg for interpretation"). See also *Resolution Trust Corp. v. Holtzman*, 248 Ill. App. 3d 105, 113 (1993) (noting that the implied covenant was not breached where "defendants' offer was not based upon clear and concrete terms but rather rested upon the speculation that the units could be more effectively marketed").

¶ 29    Mr. Comacchio's duties are set forth in the LOI and operating agreement, which list responsibilities like purchasing ingredients and maintaining all necessary licenses and permits. Learco does not point to any of these specific duties or responsibilities as ambiguous or unclear, such that the duty of good faith is a necessary aid in construing them. Rather, it argues, "At bar, there is no explicit term allowing [Mr. Comacchio] to ignore and not read emails, for example, and the general obligation to act as executive chef—which undeniably was the consideration for [his] salary—should be read in accordance with the reasonable expectation of the parties." This argument is an attempt to use the covenant of good faith to transform the general obligation to act as executive chef into multiple specific duties that are not part of the contract. In other words, Learco is trying to use the implied covenant as a source of new duties, not as an aid in construing the actual words of the contract.

¶ 30    Both of the cases Learco cites in support of this argument are distinguishable. In *Spircoff v. Spircoff*, 74 Ill. App. 3d 119 (1979), we upheld a trial court's determination that a settlement agreement required a property owner to furnish an income and expense statement to her brother—a requirement that the court viewed as part of "an implied condition of cooperation." *Id*. at 128. As later cases have noted, *Spircoff* rests on the following understanding in contract law: "Whenever the cooperation of one party is necessary for the other party's performance, there is an

11

implied condition that such cooperation will be given." *Kipnis v. Mandel Metals, Inc.*, 318 Ill. App. 3d 498, 505 (2000) (citing 6 W. Jaeger, Williston on Contracts § 887, at 427–31 (3d ed.1962)). Thus, in *Spircoff,* the specific provision allowing the brother to sell the property contained an implied provision that the sister would cooperate in that sale and the duty of good faith and fair dealing was relied on to define cooperation to include furnishing the necessary income and expense statements to allow that sale to happen. None of that analysis is applicable to this case.

¶ 31    Learco also cites *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436 (7th Cir. 1992). The court in *Beraha* specifically affirmed: "under Illinois law, the covenant of good faith and fair dealing has never been an independent source of duties for the parties to a contract *** Instead, the covenant guides the construction of explicit terms in an agreement." *Id.* at 1443. The reason that the court in *Beraha* found the covenant of good faith applicable was that Baxter had obtained an exclusive license with an obligation to pay royalties on sales of the needle. *Id.* at 1444. However, Baxter had taken no action to finish developing or to market the needle, meaning that it had exercised its discretion in a way that ensured Beraha would never get the royalties promised under the contract. *Id.* The court concluded: "Therefore, the license agreement vested significant discretion in Baxter. Guided by the covenant of good faith and fair dealing, we interpret the contract to require Baxter to exercise reasonably its discretion in developing and marketing the Beraha needle." *Id.* Again, none of that applies here.

¶ 32    In short, Learco's argument is that the covenant of good faith and fair dealing can be used to hold Mr. Comacchio to a certain level of performance in his duties as executive chef and to impose specific duties, even where the specifics of those duties are not spelled out in the contract. That is simply not what the covenant of good faith and fair dealing can be used to do.

¶ 33                    C. Breach of an Implied Term

¶ 34     Count III of Learco's complaint is based entirely on an allegation that Mr. Commacchio's agreement with Learco "contained an implied term that [he] would follow sound business practices." Learco offers no legal support for inferring this additional term into the contract. The rights and obligations of these parties are defined by the clear and unambiguous language of the operating agreement and the LOI. The rights of parties to a contract are limited by the terms expressed in the contract, and we generally do not add implied terms into an agreement because there is a strong presumption that if the parties intended such terms to be part of their agreement, they would have included them. *Board of Education of Gardner-South Wilmington High School District 73 v. Village of Gardner*, 2014 IL App (3d) 130364, ¶ 24.

¶ 35     The only case that Learco points to that comes anywhere close to suggesting that a contract to perform services contains an implied obligation to perform them at a certain level is *Altevogt v. Brinkoetter*, 85 Ill. 2d 44, 53 (1981). In that case the court referenced an implied warranty that construction of a building will be performed "in a reasonably workmanlike manner." *Id.* However, as the court made clear elsewhere in the opinion, the warranty at issue was an implied warranty of habitability that is implied on the sale of a new house. *Id.* at 49. No such implied warranty is part of the agreement that Mr Comacchio signed to be an executive chef.

¶ 36                              D. LLC Act Violations

¶ 37     Count IV alleges breach of the duty of loyalty and not to compete and the duty of care that Mr. Comacchio owed to Learco as a manager, under the LLC Act. The circuit court dismissed the noncompete allegations in this count on the basis that the language of the operating agreement and LOI displaced the requirements in the LLC Act. Learco contends on appeal that this was an error.

¶ 38     The LLC Act provides, "[t]o the extent the operating agreement does not otherwise provide, this Act governs relations among the members, managers, and company." 805 ILCS

180/15-5(a) (West 2024). An operating agreement, therefore, may restrict or eliminate fiduciary duties owed under the LLC Act. The LLC Act further provides that such modification must be "clear and unambiguous." 805 ILCS 180/15-5(c)(1) (West 2024).

¶ 39    As Learco points out, the operating agreement itself says nothing about modifying the LLC Act. However, the LOI provides: "In the event, for any reason, the Restaurant will not be opened on or before June 30, 2019, [Mr. Comacchio] shall be bound by his noncompetition obligation until December 31, 2019." The restaurant did not open by that date, and the noncompetition period agreed upon by the parties in the LOI expired on December 31, 2019.

¶ 40    The LOI was incorporated by reference into each of the three operating agreements. Where a contract incorporates another document by reference, its terms become part of the contract and that contract is construed as constituting a single instrument. *Lease Management Equipment Corp. v. DFO Partnership*, 392 Ill. App. 3d 678, 685 (2009). That reference must demonstrate "an intention to incorporate the document and make it part of the contract." *Unifund CCR Partners v. Shah*, 407 Ill. App. 3d 737, 743 (2011) (citing *Arneson v. Board of Trustees*, 210 Ill. App. 3d 844, 849-50 (1991)). By incorporating the terms of the LOI by reference, the operating agreement clearly and unambiguously supplanted the statutory duty not to compete under the LLC Act.

¶ 41    Learco argues that the LOI applies only to Mr. Comacchio's obligation to refrain from competing as an executive chef and not to his obligation to refrain from competing as a manager of the LLC, since he was not a manager of the LLC when the LOI was drafted. However, the parties continued to incorporate the LOI into the operating agreements after Mr. Comacchio became a manager of the LLC. The third and final operating agreement stated that, together, the operating agreement and the LOI "contain[ed] all of the understandings and agreements" between the parties. Additionally, unlike the first two operating agreements, the third operating agreement

14

made the terms of the LOI controlling in case of a conflict with the operating agreement. Thus, the LOI, under which any obligation not to compete had expired, was clearly controlling at the time of the alleged competition.

¶ 42    The remainder of the count IV allegations regarding the LLC Act are very cursory. Count IV alleges, in a purely conclusory fashion, that "[o]n information and belief, [Mr. Comacchio] has also personally benefitted at [Learco's] expense." Learco argues that this allegation, while "admittedly short on details," was nevertheless sufficiently pleaded given the limited information available at this stage in litigation and that it stated a violation of the LLC Act. However, Illinois is a fact-pleading jurisdiction, and conclusory allegations alone are insufficient to state a cause of action. *Doe v. Coe*, 2019 IL 123521, ¶ 32. Instead, enough facts must be alleged "to bring a claim within a legally recognized cause of action." *City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351, 368 (2004). Learco has simply not done that here.

¶ 43    Learco also claims that Mr. Comacchio's conduct constitutes a violation of the fiduciary duty of care imposed by the LLC Act. The LLC Act provides: "A member's duty of care to a member-managed company and its other members in the conduct of and winding up of the company's business is limited to refraining from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law." 805 ILCS 180/15-3(c) (West 2024). This statutory duty of care is thus a limited one. Learco argues that its allegations about the failures by Mr. Comacchio in his role as executive chef, listed in paragraph 22 of its complaint, are violations of his duty of care. Nothing in any of those allegations suggests, let alone alleges, gross negligence or reckless conduct. These allegations fall far short of what would be needed to allege a breach of fiduciary duty under the LLC Act.

¶ 44                              IV. CONCLUSION

15

¶ 45    The circuit court did not err in dismissing Learco's complaint for failing to state claim. We affirm the circuit court's dismissal.

¶ 46    Affirmed.